E. C. HUMPHREYS CO. *v.* RATHBONE MANFG. CO.

1. CONTRACTS — CONSTRUCTION — INSTRUCTIONS — SET-OFF AND RE-COUPMENT.

In an action for the purchase price of a carload of iron, where defendant claimed as an offset damages for plaintiff's failure to deliver iron under another contract made in November, 1917, under which three cars were immediately ordered, although by its terms shipments were not to begin until January, 1918, an instruction by the court to the jury that no orders given by defendant for shipment prior to January should be considered in determining defendant's damages, *held*, correct.

2. SAME—MODIFICATION OF CONTRACT—CONSTRUCTION—WAIVER.

Where plaintiff insisted upon a change in the contract in regard to the terms of payment, to which defendant reluctantly consented, on January 4th, upon plaintiff's promise that shipments would begin immediately, defendant's contention that thereby plaintiff waived the time fixed in the contract for shipments to begin, so as to render it liable for damages for failure to ship on orders given prior to January, *held*, not tenable.

3. SAME.

Where defendant's order, given on January 4th, was later canceled or merged in an order given on January 25th, so that plaintiff was not in default until it failed to make shipment of said order, the construction given the contract by the court that plaintiff would not be in default if shipment was made upon the last day of January, *held*, not prejudicial.

Error to Kent; Brown, J. Submitted June 6, 1919. (Docket No. 31.) Decided October 6, 1919. Rehearing denied December 23, 1919.

Assumpsit by E. C. Humphreys Company against the Rathbone Manufacturing Company for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*Hall & Gillard,* for appellant.

*Lombard & Hext,* for appellee.

Bird, C. J. Plaintiff is a sales agent for pig iron on a commission basis and has its office in the city of Detroit. Defendant is engaged in the business of manufacturing soft gray iron castings in the city of Grand Rapids. On November 19, 1917, plaintiff sold to defendant a car of number one iron to be paid for not later than January 20, 1918. This car is referred to in the record as the Grand Trunk car. It was delivered to defendant in Grand Rapids. Defendant refused to accept it because it did not grade up to number one iron. Subsequently the price was reduced by agreement 50 cents a ton and defendant accepted it but never made payment therefor.

Some time after the 5th of January, 1918, defendant purchased from plaintiff, by telephone, a car of "high silicon iron," which was also delivered to defendant at Grand Rapids. Defendant took exception to the quality of this car and it was subsequently resold by plaintiff to other parties.

On November 19, 1917, at the same time the Grand Trunk car was contracted for, the parties entered into a written contract by which plaintiff sold to defendant 850 tons of iron of various grades, to be delivered monthly over the first half of the year 1918. No iron was ever delivered under this contract.

These contracts were separate and independent of each other. Plaintiff, being unsuccessful in getting its pay for the Grand Trunk car, began this suit on April 17, 1918, to recover therefor, and also to recover damages for defendant's failure to accept and pay for the car of "high silicon iron."

Defendant gave notice under the general issue that it would set off its damages which arose by reason of plaintiff's failure to deliver iron under the 850-ton contract. The conflicting claims of the parties were tried out before the jury and they found a verdict for plaintiff for the amount of $1,672.70, which was due

on the Grand Trunk car, but refused to award defendant any damages on its matters of set-off. Defendant has assigned error.

To make clear the matters in dispute, it will be helpful to explain that defendant, on the trial, conceded it owed plaintiff $1,672.70 for the Grand Trunk car. The jury were instructed to allow plaintiff this item. The trial court held that no recovery could be had by plaintiff for damages growing out of defendant's failure to accept the car of "high silicon iron" because the oral contract involved more than $100, and was void under the statute of frauds. The question of damages growing out of plaintiff's refusal to deliver iron under the 850-ton contract was submitted to the jury and they, as has been said, refused to find any damages for defendant. The controversy over the Grand Trunk car may be laid aside as well as the controversy over the car of "high silicon iron," as plaintiff has not assigned error. This confines the controversy in this court to the questions growing out of the 850-ton contract. The material portions of this contract are as follows:

"Contract covering sale of foundry iron.
"Quantity: Eight hundred fifty tons.
"Grade: Southern or northern, seller's option.
"Specifications: See other side.
"Price: See other side per ton on 2,240 lbs., buyer to pay freight tax.
"Delivered: Furnace with freight allowed to Grand Rapids.
"Freight: Cash.
"Payment: Net cash 30 days from date of invoice.
"Shipment: In about equal monthly quantities over the first half of 1918, * * * buyer to give seller the quantity of each grade to be shipped on or before December 1st, 1917.
"Seller shall not be responsible 'for delays caused by strikes, differences with workmen, accidents at works, delays in transportation, or other causes beyond its control.

"Each month's shipment to be treated as a separate contract, independent of the contracts for the shipments of other months.

"If this lot is delivered by installments, settlement is to be made for each lot as delivered, and the time of payment for such settlement as specified above is understood to be the essence of this contract."

1. The following instruction to the jury is assigned as error:

"Under the evidence in this case the plaintiff was under no obligation to ship any iron to the defendant until the month of January, 1918, and no orders given by defendant for shipments prior to that time shall be considered by you in determining the damages which the defendant claims to have suffered in this case."

Very soon after the contract was made, on November 19, 1917, defendant ordered several cars of iron on the contract, notwithstanding the contract did not obligate the plaintiff to commence shipment until January, 1918. After the iron was ordered defendant kept urging plaintiff by letter to fill the order. During the time that defendant was urging plaintiff to fill the order, plaintiff advised defendant that the terms of the contract with reference to payment would have to be changed from 30 days' time to 10-day drafts subject to discount of one-half of one per cent., or the contract would be canceled. Defendant was loth to consent to the change. Many letters were exchanged between the parties in regard to it. Finally defendant consented to the change in payment as applied to the three cars which he had ordered. Plaintiff replied that the concession must go to the entire 850 tons or no iron would be shipped. Mr. Marshall, of defendant's company, then went to Detroit and saw Mr. Shaw, of plaintiff's company, concerning it, and Mr. Shaw was firm in his demand that the change as to payment must extend to the entire contract. This was on the 29th day of December, 1917. Mr. Marshall did not consent

to the change at that time but later, in a letter dated January 4, 1918, he consented to the change of payment as demanded and ordered three cars of number one and two iron.   Mr. Marshall testified that Mr. Shaw advised him when in Detroit that if he would consent to the change, as proposed, he would begin shipment immediately.

It is the contention of defendant that the court was in error in charging as he did because plaintiff waived the time fixed in the contract for the shipments to begin in the event that it would waive the change in the payment.

The court instructed the jury, as a matter of law, that the plaintiff had breached the contract and was liable for such damages as defendant has shown it had suffered by reason thereof.   The jury were then instructed as set out in the assignment heretofore quoted. The effect of this instruction was to narrow defendant's recovery to the period between January 25th and April 17th, when the suit was commenced.   We have read and considered the correspondence (which is too voluminous to print) involved in this contention but we are not persuaded that the parties intended to change the terms of the written contract by the claimed subsequent oral arrangement.   But even if they did we are unable to see how it would enhance defendant's damages.   It is conceded that defendant did not agree to the change in payment until its letter of January 4th.   At that time plaintiff's duty had arrived to make shipments under the contract.   Defendant's order of three cars of number one and two iron on January 4th was subsequently countermanded or merged in the order of January 25th for number three iron.   Plaintiff's failure to ship this iron placed it in default.   This is the order which the court referred to in the instruction complained of.   The court, in his instructions, opened the way for defendant to recoup

any losses which he suffered from the date of this order up to the time the present suit was begun. We think this was as favorable as defendant had a right to demand.

2. The contract provides, with reference to the time of shipment, as follows:

"Shipment: In about equal monthly quantities over the first half of 1918, * * * buyer to give seller the quantity of each grade to be shipped on or before December 1, 1917."

The construction which the trial court placed upon this language was that the plaintiff was under no obligation to commence shipments before January 1, 1918, and that if it made shipment upon the last day of the month it was a compliance with the contract.

It is insisted that this was error in view of Mr. Shaw's promise to commence shipment immediately if defendant would consent to the change in payment. Independently of any modification in the contract this construction by the court was undoubtedly correct. Even if Mr. Shaw made the promise that shipments would begin immediately upon the consent being given to a change in payment, and that consent was given on January 4th, and the order given on that day was afterwards merged in its order of January 25th, the plaintiff would not be in default until it failed to make shipment of the order of January 25th.

There are some other assignments argued, but we are of the impression that there is no merit in them. The judgment will be affirmed.

MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit

The late Justice OSTRANDER took no part in this decision.